UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## 24 CV 2598

Antonio A Muñoz-Hilliard

_____

_____

Write the full name of each plaintiff.

-against-

Mount Sinai Morningside Hospital

_____

Jenny Ng

_____

_____

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

____ CV _____
(Include case number if one has been
assigned)

Do you want a jury trial?

☒ Yes    ☐ No

## EMPLOYMENT DISCRIMINATION COMPLAINT

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with
the court should therefore *not* contain: an individual's full social security number or full birth
date; the full name of a person known to be a minor; or a complete financial account number. A
filing may include *only*: the last four digits of a social security number; the year of an individual's
birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule
of Civil Procedure 5.2.

Rev. 3/24/17

## I.   PARTIES

### A.  Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| Antonio | A | Muñoz-Hilliard |
|---|---|---|
| First Name | Middle Initial | Last Name |

4700 Broadway #2J

Street Address

| New York | New York | 10040 |
|---|---|---|
| County, City | State | Zip Code |

| 347-880-0104 | antonioamunoz@live.com |
|---|---|
| Telephone Number | Email Address (if available) |

### B.  Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

Mount Sinai Morningside Hospital

Name

1111 Amsterdam Ave., 1st Floor 1W-140

Address where defendant may be served

| New York | New York | 10025 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

Jenny Ng

Name

1111 Amsterdam Ave., 1st Floor 1W-140

Address where defendant may be served

| New York | New York | 10025 |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

_____
Name

_____
Address where defendant may be served

_____
County, City                    State              Zip Code

## II.   PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

**Mount Sinai Morningside Hospital**
_____
Name

**4700 Broadway #2J**
_____
Address

**New York**              **New York**        **10025**
_____
County, City                    State              Zip Code

## III.   CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: _____

☐ color: _____

☐ religion: _____

☐ sex: _____

☐ national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

My disability or perceived disability is:  **medical disability**

☒ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

My disability or perceived disability is:  **medical disability**

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B.  Other Claims

In addition to my federal claims listed above, I assert claims under:

☒ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☒ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law): _

_____

## IV.    STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

- ☐  did not hire me
- ☐  terminated my employment
- ☐  did not promote me
- ☐  did not accommodate my disability
- ☒  provided me with terms and conditions of employment different from those of similar employees
- ☒  retaliated against me
- ☒  harassed me or created a hostile work environment
- ☐  other (specify): _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

After being denied my right to take a lunch and monitor my glucose level, I filed for an accommodation under the ADA statute. I was granted the accommodation but it was taken away by Jenny Ng at her discretion. On or about March 2023, Jenny began to build a case and create a paper trail to my employee file. I filed a grievance complaint against Jenny. At meeting with Labor Relations where I reported my complaint of retaliation, they ignored my cry for help. Jenny began to issue directives to further isolate me from team meetings. She denied me trainings that my colleagues were allowed to attend. She shared my personal private information with other team members, further creating a hostile work environment which led me to resign my job. I shared my complaints to her direct reports and to Labor Relations and no one took my complaints seriously.

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V.    ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☒ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge?    October 26, 2023

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☒ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice?    January 12, 2024

When did you receive the Notice?    January 12, 2024

☐ No

## VI.    RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☒ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)
I believe I should be compensated for violating my rights under the ADA statue for discrimination and retaliation.

## VII.   PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that:
(1) the complaint is not being presented for an improper purpose (such as to harass,
cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are
supported by existing law or by a nonfrivolous argument to change existing law; (3) the
factual contentions have evidentiary support or, if specifically so identified, will likely
have evidentiary support after a reasonable opportunity for further investigation or
discovery; and (4) the complaint otherwise complies with the requirements of Federal
Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I
understand that my failure to keep a current address on file with the Clerk's Office may
result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to
proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| 4/3/2024 | | |
|---|---|---|
| Dated | | Plaintiff's Signature |
| Antonio | A | Muñoz–Hilliard |
| First Name | Middle Initial | Last Name |
| 4700 Broadway #2J | | |
| Street Address | | |
| New York, | New York | 10040 |
| County, City | State | Zip Code |
| 347-880-0104 | | antonioamunoz@live.com |
| Telephone Number | | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes   ☐ No

> If you do consent to receive documents electronically, submit the completed form with your
> complaint. If you do not consent, please do not attach the form.

Page 7

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ EEOC ☐ FEPA | 520-2023-05275 |

New York State Division Of Human Rights                    and EEOC

*State or local Agency, if any*

| Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| ANTONIO A. Munoz-Hilliard | (347) 880-0104 | 1964 |

Street Address
4700 Broadway Apt 2J
NEW YORK, NY 10040

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| Mount Sinai Hospital | 501+ Employees | (212) 420-2000 |

Street Address
1111 AMSTERDAM AVE
NEW YORK, NY 10025

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

Street Address                    City, State and ZIP Code

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| Disability, Retaliation | Earliest: 02/15/2023    Latest: 08/11/2023 |

THE PARTICULARS ARE *(if additional paper is needed, attach extra sheet(s)):*

I was employed as a peer counselor for the mobile crisis team for Mount Sinai Hospital since 2019. On February 15th, 2023, I filed for an accommodation to be allowed to take a one-hour lunch break to eat and monitor my glucose levels. Since this accommodation request has been granted, I have been subjected to being retaliated against and discriminated against based on my disability. My disciplinary action was shared with my teammates and now I have been made to feel unwelcome and not to participate in team meetings. I was given a wrongful retaliatory write up on April 4th, 2023, with unsubstantiated claims. All my correspondences with my manager Ms. Jenifer NG have been deleted and have all to do with my reasonable accommodation that was granted. I have not had any discipline since I started working there until then. I believe that I have been subjected to retaliatory discrimination based on my disability. In violation of the disability act of 1990.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. SIGNATURE OF COMPLAINANT |
| *October 26, 23* | *Antonio Munoz Hilliard* |
| Date          Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### New York District Office

33 Whitehall Street, 5th Floor
New York, NY 10004-2112
Intake Information Group: (800) 669-4000
Intake Information Group TTY: (800) 669-6820
New York Direct Dial: (929) 506-5270
FAX (212) 336-3625
Website: www.eeoc.gov

Our Reference:    Antonio A. Munoz-Hilliard v Mount Sinai Hospital
EEOC # 520-2023-05275

Mr. Antonio A. Munoz-Hilliard
4700 Broadway, Apt 2j
New York, NY 10040

Dear Mr. Munoz-Hilliard:

This is with reference to your correspondence and subsequent communication with this office in which you alleged discrimination in violation of the Age Discrimination in Employment Act of 1967 as amended, Title VII of the Civil Rights Act of 1964, as amended and the Americans with Disabilities Act of 1990, as amended by the above-named Respondent.

As discussed in our conversation on **(January 12th, 2024)**, a review of all available information provided failed to indicate that a violation of the statute(s) has occurred; however, this does not certify that Respondent is in compliance with the statutes. While we fully understand that the parties to a charge often have very firm views that the evidence supports their respective positions, our final determinations must comport with our interpretations of the available evidence and the laws we enforce. For this reason, we will issue you a Dismissal and Notice of Rights, which will enable you to file suit in U.S. District Court within 90 days of your receipt of that Notice if you wish to pursue this matter further.

We regret that we could not be of further service to you in this matter.

Sincerely,

1/12/2024                                          _____Paul F. Esposito_____
_____          Investigator
Date

cc.

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

**New York District Office**
33 Whitehall St, 5th Floor
New York, NY 10004
(929) 506-5270
Website: www.eeoc.gov

## DETERMINATION AND NOTICE OF RIGHTS
### (This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 01/12/2024

**To:** ANTONIO A. Munoz-Hilliard
       4700 Broadway Apt 2J
       NEW YORK, NY 10040
Charge No: 520-2023-05275

EEOC Representative and email:    PAUL ESPOSITO
                                  Investigator
                                  paul.esposito@eeoc.gov

### DETERMINATION OF CHARGE

The EEOC issues the following determination: The EEOC will not proceed further with its investigation and makes no determination about whether further investigation would establish violations of the statute. This does not mean the claims have no merit. This determination does not certify that the respondent is in compliance with the statutes. The EEOC makes no finding as to the merits of any other issues that might be construed as having been raised by this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission,

Digitally Signed By:Timothy Riera
01/12/2024
Timothy Riera
Acting District Director

**Cc:**

Please retain this notice for your records.

Enclosure with EEOC Notice of Closure and Rights (01/22)

# INFORMATION RELATED TO FILING SUIT
# UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court under Federal law. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

## IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

## ATTORNEY REPRESENTATION

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

## HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 520-2023-05275 to the

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Timothy Riera, 33 Whitehall St 5th Floor, New York, NY 10004.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 520-2023-05275 to the District Director at Timothy Riera, 33 Whitehall St 5th Floor, New York, NY 10004.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

## NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA)

The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at: http://www.eeoc.gov/laws/types/disability_regulations.cfm.

### "Actual" disability or a "record of" a disability

If you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability:

- **The limitations from the impairment no longer must be severe or significant** for the impairment to be considered substantially limiting.

- In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system.

- **Only one** major life activity need be substantially limited.

- Except for ordinary eyeglasses or contact lenses, the beneficial effects of **"mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.

Enclosure with EEOC Notice of Closure and Rights (01/22)

- An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.

- An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

## "Regarded as" coverage

An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).

- "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.

- The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively **both** transitory (lasting or expected to last six months or less) **and** minor.

- A person is not able to bring a failure to accommodate claim **if** the individual is covered only under the "regarded as" definition of "disability".

*Note: Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment. Beyond the initial pleading stage, some courts will require specific evidence to establish disability. For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.*

**Antonio Muñoz-Hilliard**
**347-880-0104**
**antonioamunoz@live.com**

December 15, 2023

**BY EEOC PORTAL**

Paul Esposito
U.S. Equal Employment Opportunity Commission
New York District Office
33 Whitehall Street, 5th Floor
New York, NY 10004

Re:   **Antonio Munoz-Hilliard v. Mount Sinai Hospital**
       **Case No. 520-2023-05275**

Dear Mr. Esposito:

I am writing this letter in response to the November 8, 2023, letter from respondent, Mount Sinai Morningside.

Since transitioning to the Peer Specialist position on the Mobile Crisis Team in 2021, I did not have a specific time to take a lunch and monitor my A1C levels because according to Jenny Ng, Clinical Crisis Manager "due to the nature of work on Mobile Crisis we could not take a specific lunch hour or not take a lunch hour at all." I repeatedly requested for Ms. Ng to accommodate my request which she did not do.

On February 2, 2023, I contacted Lauren S. Weiss, Human Resources-Labor and Employee Relations requesting guidance on obtaining an accommodation under the Americans with Disabilities Act (exhibit 1). On February 13, 2023, in response to EHS's request for documentation I submitted a letter from my Endocrinologist Dr. Anastasios Manessis. On February 15, 2023, EHS sent an email with the specific accommodation. On February 27, 2023, Ms. Ng sent the

email that the MSM would grant the accommodation for 30 days and on March 27, 2023, the accommodation was granted indefinitely.

The Hospital did retaliate and discriminate against me for requesting the accommodation. I was forced to resign because of Ms. Ng's and the Hospital's retaliatory and discriminatory actions. The April 2023 first level warning was unfounded and meant to silence me (Exhibit 2). When meeting with Ms. Ng, William Coit, Associate Director Mount Sinai Morningside, and Ms. Rossyovi Mercedes, I informed them that I have been in employed at Mount Sinai since 2019 without ever having a disciplinary action or been reprimanded. To which I was met with "well you are now, you are being insubordinate and face termination." I knew that the hospital was not going to hear my complaints and grievances. When I filed my grievance with Mr. Hal Budnick, Labor Relations Department I explained my concerns about being retaliated and discriminated upon due to my request for an accommodation and that an investigation me initiated. (Exhibit 3).

During the Grievance Hearing on June 22, 2023, I again brought up the fact that I have been with the Hospital since 2019 without any disciplinary action nor been reprimanded, but my concern was met with silence. When I brought up my concern of retaliation and discrimination again my concern was met with silence by Mr. Devin Sullivan.

On September 26, 2022, Ms. Ng memorialized in this email to my colleague that I was not a Social Work Assistant and that I would not have the documents she was required to have to perform her work (Exhibit 4).

The Department and Ms. Ng contend the request for a "one hour lunch daily to allow me to monitor my blood glucose levels via finger sticks and remain consistent with meals" was a non-issue but Ms. Ng would remove this accommodation at her discretion, but it was an issue according to Ms. Ng "due to the nature of Mobile Crisis 2-hour response time."

The November 2022 performance evaluation required me to perform the duties of my other co-workers who are 1199 Union members. When I corresponded with the union delegate and union representative, I was informed I was not to do their duties and to notify them if I was told to do the union members' job duties. Ms. Ng did not approve of my advocacy when it came to hospital policies. When she informed me that I needed to help my co-workers I informed her that would not perform their duties when they are not able to complete their duties. I also

informed Ms. Ng that I would no longer work outside of my scheduled work shift. I informed Ms. Ng that I would no longer fulfill the duties of interpreter, the hospital has a policy about using Qualified Medical Interpreters, of which I am not qualified to provide this service. Ms. Ng needed to get guidance on this even though I provided her with the flyer issued by Mount Sinai Hospital (Language & Communication Services).

To Ms. Ng and the Hospital, I was now contentious, unprofessional and a problem, but this is not the first time they have dealt with a peer that is no longer wanted in their employ (exhibit 5).

Ms. Ng created a culture of unprofessionalism, splitting the team, sharing private and confidential information about her staff and company practices (exhibits). If there was a fact-finding investigation, I was never approached to share what I knew and how I was being treated by Ms. Ng. I was never provided with any information about my behavior or conduct because there was none.

I disagree with the assertion that Ms. Ng did not share my disciplinary write up with my colleagues. In June 2023, management met with Ms. Ng and Ms. Wilson to present a letter as part of this investigation, which can be verified through email chain. Soon after that meeting an email marked 'Importance: High' was issued by Ms. Ng to further alienate me from the team (exhibit 6). Management defended this notice during my grievance hearing, to try to get me to quit. Ms. Ng has previously stated how management operates to get employees to leave. Ms. Ng also made sure that I could not complete my annual trainings because she withheld the information to register for these trainings, but all my other colleagues were registered for their trainings well in advance (exhibit 7). Ms. Ng has a propensity to share staff disciplinary actions and demands other staff members to write letters to bolster her claims, stipulating this demand is coming from HR and can be easily verified through the internal email system. I know this because she shared Antonio Lauradin's disciplinary action with me, which shows the language she used to disparage Antonio, the union representative, and her Associate Director, Mr. Coit (exhibit 8). Ms. Ng made it known that she is untouchable, and she can get away with anything and has the blessing from the Hospital.


On July 31, 2023, I resigned because I could no longer continue to work under the insufferable conditions that Ms. Ng and the Hospital inflicted on me.

First and foremost, my assertion is that Ms. Ng and the Hospital retaliated and discriminated against me because of my request for accommodation under the ADA is valid. Because of the proximity of adverse actions taken against me from the request of the accommodation and when I started having problems after being an exemplary employee, I resigned under duress and my health suffered. The accommodation was removed at Ms. Ng at her discretion. Regarding the Microsoft Teams threads, they were deleted after I filed the grievance, Ms. Ng and Tony Lau from IT have a very close relationship and maybe an investigation to the delete threads will further provide evidence of Ms. Ng's unscrupulous behaviors (exhibit 9).

I was an exemplary employee and well liked and appreciated by the team and others within the hospital system. I was asked to be a member of the Incident Review Panel. I applied for a $4000.00 Expand Certified and Credentialed Peer Capacity Grant that both Ms. Ng and the Hospital approved (exhibit 10). Birthday cards from my colleagues and text shared by Ms. Ng show that the previous Associate Director spoke highly of my work; Dr. Swapnil Gupta enjoyed working with me (exhibit 11).

The evidence demonstrates that I was discriminated against and retaliated because I invoked my rights under the ADA and request that this charge be accepted.

Sincerely,

Antonio Muñoz-Hilliard

EXHIBIT 1

**FW: ADA questions**

**Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>**

Fri 2/3/2023 1:43 PM

To:Antonio Munoz <antonioamunoz@live.com>

2 attachments (308 KB)

HR-15.11 - Employees with Disabilities - Statement and Form (Last Revised Date 05.2021).pdf; Medical Clearance Form 2019
(1).pdf;



Tony Muñoz-Hilliard, NYCPS, NCPS
Peer Counselor

Mobile Crisis Team
Division of Acute Inpatient Psychiatry
Mount Sinai Morningside Hospital
1111 Amsterdam Avenue
Office: 1st Floor 1W-140A
O 212-523-6711
T 212-636-8717
C 347-271.0090

Antonio.Munoz-hilliard@mountsinai.org

**From:** Weiss, Lauren (HR) <Lauren.Weiss@mountsinai.org>
**Sent:** Friday, February 3, 2023 11:56 AM
**To:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>
**Cc:** McNicholas, Ann <Ann.McNicholas@mountsinai.org>; Jean-pierre, Rachel <Rachel.Jean-pierre@mountsinai.org>
**Subject:** Re: ADA questions

**Good Morning Tony,**

**It was a pleasure speaking with you today. As per our conversation, please see the attached HR
policy for Employees with Disabilities and the EHS Medical Clearance Form. As discussed, please
work with your doctor and EHS regarding any restrictions and accommodations so we can continue
working with you through the interactive process.**

**I have also included Rachel Jean-Pierre on copy, the Leave Coordinator for MSM & MSW.**

**Thank you.**

# EXHIBIT 2

| A      A | X   **MSSL** I I 11 Amsterdam Avenue<br>New York, NY 10025<br><br>☐   **MSW** I 000 Tenth Avenue<br>New York, NY 10019 | **NOTICE TO** EMPLOYEE |
|---|---|---|
| Employee: Antonio Munoz-Hilliard | Employee: 8202199 | Department: Psych | Supervisor: Jenny Ng, LCSW |
| Position: Peer counselor | Date of Hire: 10/21/19 | Date & Type Last Warning: *NIA* | Today's Date: April 4th, 2023 |

Rule(s) Violated: **HR-13.02, Employee Rules of Conduct**

- Failure to follow instructions or refusal to accept a job assignment.
- Use of vile, intemperate or abusive language.
- Any willful act or conduct detrimental to patient care or to Health System operations.

Details of Violation (Explain as specifically as possible):

On or about January 26, 2023 you were in the field with another team member. The other team member ran ciut of the patient consent packet and asked if you had a copy, to which you said no. You later admitted to me that you did in fact have the packet, but declined to provide it, stating it was not your responsibility. I reminded you that, consistent with what was discussed at our meeting on or about December 15, 2022, it is in fact everyone's responsibility to carry the paperwork and your job to collaborate with your partner for the welfare of the patient. You should not withhold the necessary paperwork, whatever the reason your partner may not have it with them; our patients come first.

Here is an email date September 26, 2022, sent by you tell my colleague that I will not be bringing any documents.

**From:** Dokaj, Maria <Maria.Dokaj@mountsinai.org>
**Sent:** Monday, September 26, 2022 9:36:30 AM
**To:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Cc:** Mobile Crisis Team <MCT@mountsinai.org>
**Subject:** Re: meet me in the field

I don't have the forms with me since I came from home. Do you want me to ca to the office to get them?

Sent from my iPhone

On Sep 26, 2022, at 9:33 AM, Ng, Jenny <Jenny.Ng2@mountsinai.org> wrote:

Hey Maria,

Just FYI, Tony will not bring any forms as he's not the SWA and we should have extra copies with us. Just wanted to I case you ask him when he arrives. Thanks.

On or about March 1, 2023, notwithstanding our prior discussions on this topic, you initially refused to bring all the necessary paperwork for a field visit when your team member was not able to do so. I reminded you that it was part of your responsibility. You repeatedly demanded I respond to your question-"whether [your] team member was prepared"-and suggested that I was asking you to "bring schoolwork" for them. You finally brought the paperwork to your team member as requested.

I would like to clarify that what you were asking to do was to bring Jamie her 9.58 designation. The 9.58 designation that was issued to her by DOHMH with her name and designation number. Maybe this is an issue that needs to be addressed with DOHMH about how Jamie is careless about patient care. My colleague should have this paper at all times especially if she is going to remove an individual for transport. I am not the holder of this designation, my name nor license is on this paper.

On or about March 17, 2023, I directed you to include additional information in your patient notes. You initially refused to include the reason for closing the case, stating that I was "putting words in [your] mouth." I clarified that I was not asking you to write something you did not say to the patient, rather I was asking you to add additional details in your note to indicate why we were closing the case. You replied, "We just had an EOD meeting and none of your requests were discussed or shared." I explained that we did discuss in the *BOD* meeting why we would close out the case, and then I offered you alternative language so it would be clear the reason was not shared with the referral source (but would still be documented in the note). You replied, "Stop, this is only getting worse.
... No you're asking me/making it my fault and correct the miscommunication with R/s[.] I am done, I am getting sick from all of this and my lunch is ruined and now I have to go to a visit." I

explained that we could talk about this the following Monday, and
clarified that you were not expected to respond to my e-mails
while you were taking lunch. You replied that you "didn't need
help with [your] documentation, [you] need clear and accurate
information, which neither of you provided."

Here is a copy of the of the email exchange we had in
regarding to account of what transpired.

Hey, so let's talk about this in person on Monday then. I emailed you so I can help you with the
documentation. You were not expected to respond to my emails since you were taking lunch.

**From:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>
**Sent:** Friday, March 17, 2023 1:39 PM
**To:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Subject:** RE: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Stop, this is only getting worse. You continue to want to do this via email, which is not working. I was at the meeting
speaker phone, if that is what you said, that is not what I heard.

Jaime demand was

Tony can you call the referent to ask if this client attended telehealth appointment and then close
case?

I am supposed to be at lunch, and here I am with you.

No you're asking me/making it my fault and correct the miscommunication with R/s

I am done, I am getting sick from all of this and my lunch is ruined and now I have to go on visit.

Thanks

Have a great weekend!

**From:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Sent:** Friday, March 17, 2023 1:31 PM
**To:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>
**Subject:** RE: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

If it helps with your documentation, call the r/s to explain why we are closing the case.

Otherwise, we still need to document this for our internal chart review purposes on why we are closing the case. You can write the following in a separate paragraph, "Reason for case closure: MCT will proceed with case closure since pt was no longer residing at the address listed on the NYC

Hey, so in the EOD meeting, we did discuss why we would close out her case regardless if she attended her appointment or not; we do not have an updated address for the pt and pt did not call us back

Well referral and pt did not call MCT back from her new number ▉▉▉▉▉▉ with her updated address."

Thank you.

**From:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>
**Sent:** Friday, March 17, 2023 1:17 PM
**To:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Subject:** RE: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉

I am out to lunch

Jenny we just had an EOD meeting and none of your requests were discussed or shared. All that was said at EOD mee referent to see if pt attended and close case

Which is what I did after being order by college.

**From:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Sent:** Friday, March 17, 2023 1:13 PM
**To:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org> **Subject:** RE: ▉▉▉▉
▉▉▉▉▉▉▉▉▉▉

To clarify, I am not asking you to write something that you did not say to her. I am asking you to add more details in y note that include why we are closing the case.

You can call her back to explain that we are closing the case since pt was no longer residing at the address listed on the NYC Well referral and pt did not call MCT back from her new number ▉▉▉▉ ▉▉ with her updated address. Otherwise, I am asking you to clarify in your note for chart review purposes to explain why we are closing the case on our end. Just like when you have explained in your previous notes that MCT is closing the case because pt is linked back to treatment except in this case, we are explaining a different reason why we are closing the case. Thanks.

**From:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>

**Sent:** Friday, March 17, 2023 1:06 PM
**To:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Subject:** RE: ████████ ██████████████

I will add the date and time, but I will not put the rest since I did not share that with her.  You are putting words in my r
of you want to write that I will be more than happy to added to my note

**From:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Sent:** Friday, March 17, 2023 1:03 PM
**To:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org> **Subject:** RE: ████
████████████████████████

This writer contacted R/s Anne Wendland, NP @ Bellevue hospital 718-674-5575 to confirm whether
███ attended her appointment today at 10:45AM.  R/s Anne stated that ███ didn't attend her
appointment but she had word from someone close to ██ that she has made an appointment with New
York Psychotherapy Counseling Center with therapist Gisela 718-485-2100.  R/s Anne will keep ████
case open for 30 days in case she needs medications, but stated that ██ should have two weeks left of
medications.  This writer informed R/s Anne of case closure.  MCT will proceed with case closure
since pt was no longer residing at the address listed on the NYC Well referral and pt did not call MCT
back from her new number ███████████ with her updated address.  No further intervention from

Thanks.  Please add the highlighted part to your note. This way, we are clear with the date and time of the appointment and we explain
why we are closing the case.

MCT needed at this time, case is now closed.

**From:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>
**Sent:** Friday, March 17, 2023 1:00 PM
**To:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Subject:** RE: ████████████████████

But I did not speak with her about that, that would mean I am writing something I did not say.

**From:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Sent:** Friday, March 17, 2023 12:59 PM
The date and time are factual. I made an edit to the second part so that it is factual instead of appearing as you explained it to her. We have to justify why we are discharging our case. Thanks!
**To:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org> **Subject:** RE: ████
████████████████████████

**From:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>
**Sent:** Friday, March 17, 2023 12:49 PM
**To:** Wilson, Jamie <Jamie.Wilson@mountsinai.org>; # Mobile Crisis Team <MCT@mountsinai.org>
**Subject:** ████████████████████

████████████████████

@ 12:26 pm

This writer contacted R/s ███████████████ to confirm whether IO attended her appointment today at 10:45AM. R/s Anne stated that IO didn't attend her appointment but she had word from someone close to IO that she has made an appointment with New York Psychotherapy Counseling Center with therapist Gisela 718-485-2100. R/s Anne will keep ██ case open for 30 days in case she needs medications, but stated that IO should have two weeks left of medications. This writer informed R/s Anne of case closure since pt was no longer residing at the address listed on the NYC Well referral and pt did not call MCT back from her new number ███ ██ with her updated address. No further intervention from MCT needed at this time, case is now closed.

On or about March 20, 2023, we met to discuss the patient note, among other things. You insisted on an apology for my March 17, 2023 email, and repeatedly claimed you get "sh-tted on" when you don't "do something right." I reminded you were not being yelled at or reprimanded, and that we were not asking questions because we thought you did something "wrong." You repeated that you were being "sh-tted on." You finally updated the note as requested.

On or about March 27, 2023, while you and I were out in the field, you stated in sum and substance, "[another co-worker] is creating a toxic environment. Pm f-cking sick and tired of this. I am not going to be a team player. They need to be a team player. I do not want to repair our [another co-worker] relationship."

On or about March 28, 2023, you were present for a staff meeting with me and another team member to review cases. You stated that a task in the team email, to "call and/or text" patients, was unclear. I acknowledged your feedback, and clarified that you can call first and then text the patient to confirm. You kept repeating, "The team email was not clear." I advised in substance, it is okay if team members occasionally make mistakes. You became physically tense, inhaling and exhaling deeply in a concerning manner.

Shortly thereafter, you came to my office. Standing in the doorway, in earshot of other team members, you stated, "I might have to take a leave of absence. I need to figure out what I need to do because you and [another co-worker] are creating a toxic environment." I told you to come in to talk about this. You put one hand up, and in a loud and inappropriate tone, stated in sum and substance, "Don't! What you are doing to me... " I replied, "Okay, if you want to talk about this, which I do, then we need to talk about this privately, and not with the doors open." You stated you were taking lunch. I replied okay, I am available later. You said you had to "figure out what [you were] going to do about this."

Your actions were unacceptable, unprofessional, and disruptive. You are expected to always behave in a courteous and respectful manner. You must demonstrate immediate and sustained improvement. Failure to do so will result in continued discipline up to and including termination of employment.

Regarding your account of the dates March 27 and 28, you fail to recognize that I have suffered a traumatic event while on the job that to this date I continue experience the consequences of that day. You were trying to address a traumatic event on the subway, on the way to a crisis response call. My response was probably not appropriate, but neither was yours in having a traumatic discussion in the open. I don't know how to react when you are not providing trauma response approaches to a traumatic event. We are a mobile crisis team, and we should know how to hold people in a safe space, this is not what I received. Yet you write me up for this.

What I do know and feel like is that you are building a case against me. I have been employed at Mount Sinai since

October 2019; I have not had any issues let alone any disciplinary issues. But what I do know and how it feels is that in February of 2023 I filed for accommodation under the ADA. An accommodation that you were not happy about which makes me think that this is retaliation for my accommodation.

On March 23, Jamie left the office to take care of personal business according to her email. Was required to use PTO, like I am asked to take PTO when I am taking time off from work. If not, then I am being treated differently from my co-workers

**From:** Wilson, Jamie <Jamie.Wilson@mountsinai.org>
**Sent:** Thursday, March 23, 2023 10:59 AM
**To:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org> **Cc:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Subject:**

Can you meet me at the client's home at 12pm? For ████████. I have to make a quick stop somewhere first.

On March 23, Jamie left the office to take care of person business according to her email. Was required to use PTO, like I am asked to take PTO when I am taking time off from work. If not, then I am being treated differently from my co-workers

It appears there is an issue with habitual issue between Jamie and me. One that I do not understand. One that I have asked you to address, but I never know how it has been resolved cause it continues to happen.
**From:** Wilson, Jamie <Jamie.Wilson@mountsinai.org>
**Sent:** Thursday, September 15, 2022 7:46 PM
**To:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org> **Subject:** ████████
████████:

Hello,

Due to the 4 back-to-back referrals today, 9/15, we did not have time when getting back to the office to close this case referent. I was just curious why you did not call referent to close it when you were in the office?

Hello,

While I understand that team was hit with 4 back to back referrals. And there was not enough coverage for the team. I would like to remind you that I have had request PTO for yesterday. Attached is the email by Clinical Crisis Manager regarding the procedure to request time off and the

attached policy. I am also enclosing the email sent by the Clinical Crisis Manager during her PTO, giving instruction that I was not available between to 2pm-4pm. Since my shift ends at 4pm I was technically off at 2pm.

We did not do the EOD meeting until late morning. I remember since we were having a jovial conversation regarding 11:11.

- The first referral came in at 12:12pm ████████████████████ which came under the wrong name. At 12:22 I sent out the email informing the team of the correct name for ████████ after an exhaustive search.
- The second referral came in at 12:18 pm ████████████████████████████ again under the wrong spelling from NYCWell. You came and informed me that he had been in our CPEP in august so he should have had an MRN number at 12:34 pm I was able to find his records after a exhaustive search.
- The third referral came in at 12:52pm, ████████████████████ you and I had a conversation about calling NYCWell and rejecting the referral, because she had been to our CPEP less than 24 hours seen and evaluated/assessed and deem not in danger to self or others. The referent her mother was not aware that she had walked herself to the CPEP. You asked me to contact her psychiatrist for collateral. At 1:10 pm I called Dr. Ravan and emailed the team at 1:28pm about my conversation with him.
- At 1:28 pm I sent out an email to the team that I was going to lunch.
- My meeting started promptly at 2:00 pm
- The fourth referral came in at 3:23 pm, ████████████████████ knowing that the team was already taxed with 3 referrals and a transport I looked up the information for this referral while in my meeting

So to answer your question, I was not on the clock and did not call the referent to close the case because my day ended at 2pm.

@ 8:44 am

This writer contacted R/s Alexey Dmitriyev, supervisor at supportive housing program called Faces NY, 646-470-5094 to provide update and case closure. R/s Alexey states he has not done the APS referral he is having problems with the new referral process. R/s thank team for efforts, case is now closed. No further role for MCT at this time.

**From:** Wilson, Jamie <Jamie.Wilson@mountsinai.org>
**Sent:** Friday, March 10, 2023 8:21 AM
**To:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Cc:** # Mobile Crisis Team <MCT@mountsinai.org>
**Subject:** Re: ████████████████████

Okay, Tony can you call the referent and close the case pls? And just remind them or ask about the aps case the referent said he was making. Thanks

Sent from my iPhone

On Mar 10, 2023, at 7:28 AM, Ng, Jenny <Jenny.Ng2@mountsinai.org> wrote:

Hey Jamie,

Why are we making another attempt on this case? Pt declined 1x and was UTLx2 so we made 3 attempts. We should c
and just ensure that the r/s submitted an APS referral

In order to help you achieve this goal, you are directed to enroll
and attend the following PEAK classes, providing copy of
receipt of your attendance:
- Emotional Intelligence (April 20, 2023, 2:00p - 4:00p)
- Self-Awareness and Perception (May 3, 2023, 2:00p -4:00p)
- Navigating Conflict as a Leader (May 23, 10:00a - 11:30a)

# EXHIBIT 3

**Casciani, Anastasia**

| | |
|---|---|
| **From:** | Munoz-hilliard, Antonio |
| **Sent:** | Tuesday, June 13, 2023 10:19 AM |
| **To:** | Budnick, Hal |
| **Cc:** | Casciani, Anastasia |
| **Subject:** | RE: Connect with LR |
| **Attachments:** | RE: MUNOZ-HILLIARD, ANTONIO Life# 8202199; Notice to Employee.docx |
| **Follow Up Flag:** | Follow up |
| **Flag Status:** | Flagged |

Hi Hal,

    Rule(s) Violated: HR-13.02, Employee Rules of Conduct

- Failure to follow instructions or refusal to accept a job assignment.
- Use of vile, intemperate or abusive language.
- Any willful act or conduct detrimental to patient care or to Health
  System operations.


I am grieving the disciplinary actions taken against me. I am a persona non grata because of the accommodation I requested on February 15, 2023 to be able to take a lunch to monitor my glucose levels and have a lunch. I feel that the proximity of the request and my disciplinary are related. I have been employed here since October 2019 and have never been disciplined before this. This feels like it is retaliation and discrimination because I requested the accommodation, one that my supervisor was not happy with and she made me know it. I tried to work with her before requesting the accommodation but she would not work with me regarding my need to take care of my health.

Since my disciplinary action, I have been silenced and not invited to participate in team meetings, my colleague has not wanted to work with me. The disciplinary has been share with my team and has create an unsafe space for me.

I noticed that the Microsoft Teams conversations between me and my supervisor have been deleted. I think we looked into these conversation we can establish our working relationship and engagement before the request for accommodation. I hope that those conversation are being preserved.

Have completed the required corrective actions

    In order to help you achieve this goal, you are directed to enroll and attend the
    following PEAK classes, providing copy of receipt of your attendance:
- Emotional Intelligence (April 20, 2023, 2:00p - 4:00p)
- Self-Awareness and Perception (May 3, 2023, 2:00p -4:00p)
- Navigating Conflict as a Leader (May 23, 10:00a - 11:30a)

I requesting that my response be memorialized as part of my employee records. And that an investigation into my claim that is a case of retaliation and discrimination.

1

# EXHIBIT 4

**From:** Dokaj, Maria <Maria.Dokaj@mountsinai.org>
**Sent:** Monday, September 26, 2022 9:36:30 AM
**To:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Cc:** Mobile Crisis Team <MCT@mountsinai.org>
**Subject:** Re: meet me in the field

I don't have the forms with me since I came from home. Do you want me to ca to the office to get them?

Sent from my iPhone

On Sep 26, 2022, at 9:33 AM, Ng, Jenny <Jenny.Ng2@mountsinai.org> wrote:

Hey Maria,
Just FYI, Tony will not bring any forms as he's not the SWA and we should have extra copies with us. Just wanted to let you know in case you ask him when he arrives. Thanks.
**From:** Dokaj, Maria <Maria.Dokaj@mountsinai.org>
**Sent:** Monday, September 26, 2022 9:21 AM
**To:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>
**Cc:** Mobile Crisis Team <MCT@mountsinai.org>
**Subject:** Re: meet me in the field
I have the referral but I don't have any form. Can you bring them, thanks

Sent from my iPhone

On Sep 26, 2022, at 9:15 AM, Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org> wrote:

Yes I will meet you


**Mount Sinai**

Tony Muñoz-Hilliard, CPS, NCPS
Peer Counselor
Mobile Crisis Team
Division of Acute Inpatient Psychiatry
Mount Sinai Morningside Hospital
1111 Amsterdam Avenue
Office: 1st Floor 1W-140A
O 212-523-6711
T 212-636-8717
C 347.271.0090

# EXHIBIT 5



**11:05**

31

**Suet**

Why

U are gonna be at the clinic 100 percent once Linda is pushed out and we will have to hire another full time peer

She actually said that

But what if I want apply for the MCT position

Meeting on Thursday is to discuss Linda's responsibilities, once it's presented to her, they are hoping she won't accept moving forward with the full time position and if she does, we will have to document her performance of lack of

Oh wow

That's cold

# EXHIBIT 6

**From:** Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Sent:** Tuesday, June 13, 2023 2:08 PM
**To:** # Mobile Crisis Team <MCT@mountsinai.org>
**Subject:** Fieldwork
**Importance:** High

Hi everyone,

If you and your partner want to travel separately to the patient's home, please coordinate the time to meet there. I understand that everyone has a preference on how to get there so you do not have to travel together. Thank you!



Jenny Ng, LCSW

Clinical Crisis Manager

Mobile Crisis Team

Division of Acute Inpatient Psychiatry

Mount Sinai Morningside Hospital

1111 Amsterdam Avenue

1st Floor – 1W-140

New York, NY 10025

Office: 212-523-6711

Fax: 212-523-7988
Jenny.Ng2@mountsinai.org

# EXHIBIT 7

**Munoz-hilliard, Antonio**

| | |
|---|---|
| From: | Ng, Jenny |
| Sent: | Tuesday, July 25, 2023, 1:11 PM |
| To: | Munoz-hilliard, Antonio |
| Subject: | CPI Training |

Hey,

Please go on PEAK and schedule a CPI training since yours is due August 2023. Thank you.



Jenny Ng, LCSW
Clinical Crisis Manager
Mobile Crisis Team
Division of Acute Inpatient Psychiatry
Mount Sinai Morningside Hospital
1111 Amsterdam Avenue
1st Floor – 1W-140
New York, NY 10025
Office: 212-523-6711
Fax: 212-523-7988
Jenny.Ng2@mountsinai.org



## July 2023

| Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday |
|---|---|---|---|---|---|---|
| | | | | | | **1**<br>Shanta 10:15AM - 8PM |
| **2**<br>Shanta 10:15AM - 8PM | **3**<br>Jenny PTO<br>Tony 8-4 | **4**<br>Holiday | **5**<br>Jenny PTO<br>Jamie PTO<br>Shanta 10:15AM - 8PM<br>Tony 8-4 | **6**<br>Jenny 10:15-8PM<br>Tony 8-4 | **7**<br>Jenny PTO<br>Jamie Def Cov<br>Shanta 10:15AM - 8PM<br>Tony 8-4 | **8**<br>Shanta 10:15AM - 8PM |
| **9**<br>Jamie 10:15-8PM<br>Shanta 10:15AM - 8PM | **10**<br>Jamie Cover 10:15-Mature<br>Shanta 10:15AM - 8PM<br>Tony 8-4 | **11**<br>Jamie 10:15-8PM<br>Tony 8-4 | **12**<br>Jenny PTO<br>Shanta 10:15AM - 8PM<br>Tony 8-4 | **13**<br>Jenny PTO<br>Jamie 10:15-8PM<br>Tony 8-4 | **14**<br>Jenny PTO<br>Jamie 10:15-8PM<br>Tony 8-4 | **15**<br>Shanta 10:15AM - 8PM |
| **16**<br>Jamie 10:15-8PM | **17**<br>Jamie Cover 10:15-Mature<br>Tony PTO | **18**<br>Jamie Cover 10:15-Mature<br>Tony 8-4<br>Shanta 8-2PM (OPT Training) | **19**<br>Jamie 10:15-8PM<br>Tony 8-4 | **20**<br>Jamie 10:15-8PM<br>Howell PTO/Shanta Cover<br>Tony 8-4 | **21**<br>Jamie 10:15-8PM<br>Tony 8-4 | **22**<br>Shanta 10:15-8PM |
| **23**<br>Jamie 10:15-8PM | **24**<br>Shanta 10:15AM - 8PM<br>Tony 8-4 | **25**<br>Jamie 10:15-8PM<br>Tony 8-4 | **26**<br>Jamie 10:15AM - 8PM<br>Shanta 10:15AM - 8PM<br>Tony 8-4 | **27**<br>Jamie 8-2PM (OPT Training) | **28**<br>Jamie 10:15-8PM<br>Tony 8-4 | **29**<br>Jamie Cover 10:15-SIGNED?<br>Shanta 10:15AM - 8PM |
| **30**<br>Jamie 10:15-8PM<br>Shanta 10:15-8PM | **31**<br>Tony PTO | | | | | |

# EXHIBIT 8



10:45

22

**Suet**

Nitrofurantoin

Sep 7, 2022 at 5:32 PM

How did it go

This mother fucker piece of shit

There's too much shit that was said. I just left. After the Union, Antonio and I met with William

After William left, Antonio continued with me

So your besties now

Oh no. We were at each other's throats

He said I treat him differently than others with attendance

And remember how I told you he might pull a race

**Suet** 〉

There's too much shit that was said. I just left. After the Union, Antonio and I met with William

After William left, Antonio continued with me

So your besties now

Oh no. We were at each other's throats

He said I treat him differently than others with attendance

And remember how I told you he might pull a race thing??

What did he say about race

There was so much shit that was said. The union rep is black. She complained why I went to HR instead of talking to them (him and union) about it. My boss had to fucking explain that I went to union to get guidance on the right next step to take. I was like do I not have a right to consult with HR? Fucking union was like u were supposed to talk to us first. I said no, if I don't know how to proceed, I will reach out to HR for guidance to make sure I'm going the right thing.

Then this fucking bitch goes this department (I think she means psych department in general and not my program) says ppl are often getting written up and it's specific group of people

I fucking asked, I'm confused, what do you mean by that? I guess she didn't hear me and I didn't follow up cause I wasn't gonna open that fucking can of worms

What william have to say

Dude I have to give you a breakdown tomorrow, so much shit was said

William was not fucking helpful

Message





Suet

You know she probably Republican and racist



I have to mark that shit is red

I wrote "Maria, this is an opinion of yours and it is absolutely clinically irrelevant. It comes off as very judgmental and culturally insensitive. This HAS to be deleted. Additionally, when Muslims are praying, they have to face Mecca which may be why the patient was facing that way."

Can't wait to hear her rebuttal



Yo it's fucking bad

How did Hilary and Sara not correct her

Maria also prides herself in not getting any corrections from Sara and Hilary



iMessage





Suet ›

Heading back

Be there in 10

Hurry up I'm hungry

Get out of the toilet

Dec 16, 2021 at 5:18PM

If I have to hear one my fucking time about her credentials or who the fuck she worked for, I'm gonna hurt myself

I asked her to edit a note using the grand rounds tips and strength based language. She wrote "pt annoyed" so I said change that

Message

• • •

**Suet** ›

making you team up from VNSNY crew, and you will eventually get rid of everyone

You mean she told you antonio has been talking to her about Jamie?

I wonder what Antonio told Julie lol

1 Reply

They damn right Im making my own vns team 🐻

2 Replies

I wonder what Antonio told Julie lol

Like what did Antonio tell Julie about Jamie

If people did their work, they have nothing to worry about. If they did their work, I would want to keep them

They damn right Im making my own vns team 🐻

2 Replies

Careful, so far your choice have not been good. What Jaime did was not cool, already not liking her. Let's not talk about Eli, total loser

Message



**Suet**

They have your DNA now they are going to sell your data

I'm tired of fucking being nice to people

Like what the fuck man

I sent his ass home early at 530 to work remotely with the understanding that he WILL work remotely

I got to the office at 5 office was dark surprised to see maybe napping. The the cleaning came in and they were all googling eyes. I hope they didn't go into your offer to have sex 😬

It's fucking 8:14 and he still hasn't responded to my text and email about that fucking referral that came in at 7:01

He is not working he probably thinks you told to take the day off

iMessage

# EXHIBIT 9



11:16

22

Suet

No

About program

We have to pay into short
term disability?

Yes

I just met the IT man. He's
from Hong Kong too and
he's gonna give me a new
computer with all the
permission lol. He came to
my office to talk to me cause
we speak the same dialect

Oh get me new computer
too and laptop

Do u know the him, Tony Lau

I would have to see him

Ooo he said he's good
friends with howie and was
friends with Sara

# EXHIBIT 10

| | |
|---|---|
| **From:** | Munoz-hilliard, Antonio |
| **To:** | Antonio Munoz |
| **Subject:** | Fwd: Congratulations on your successful application |
| **Date:** | Monday, February 21, 2022 11:21:12 AM |
| **Attachments:** | image003.png |
| | CCU Provider Contact Form 11-17-2021.pdf |
| | FW question.msg |



Tony Muñoz-Hilliard

Peer Counselor

Mobile Crisis Team

Division of Acute Inpatient Psychiatry

Mount Sinai Morningside Hospital

1111 Amsterdam Avenue

Office: 1st Floor 1W-140A

O 212-523-6711

T 212-636-8717

C 347.271.0090

**Get Outlook for iOS**

**From:** Suramelli, Luka <Luka.Suramelli@mountsinai.org>
**Sent:** Thursday, February 17, 2022 4:30:03 PM
**To:** Munoz-hilliard, Antonio <Antonio.Munoz-hilliard@mountsinai.org>; Ng, Jenny <Jenny.Ng2@mountsinai.org>
**Subject:** RE: Congratulations on your successful application

Hi Tony,

See attached. I will give you the missing information.



**Luka Suramelli, DNP, MBA**

Executive Director of Psychiatry Services
Mount Sinai West and Morningside Hospitals

December 15, 2021

Re: Expand Certified and Credentialed Peer Capacity – Request for Application

Mount Sinai Morningside hospital Mobile Crisis Team is pleased to submit the grant application to expand certified and credential peer capacity. The hospital is looking to utilize this grant to retain our current peer staffing and improving our consumer experience and outcomes.

Currently, our program employs one full time certified peer specialist since October 2019. The peer specialist provides direct service to consumers on our team and works a 35 hours a week schedule. In the last six months and to this date, our program has served 264 unique individuals.

- Understand the principles and practices of peer support services
- Provide adequate peer supervision
- Deepen the treatment teams' understanding of the experience of being a mental health consumer.
- Provide good pay and competitive benefits.
- Publicly recognize a peer provider's contribution to the organization.
- Offer flexible work schedules that recognize an employee's need for work/life balance.
- Create a workplace culture that is inclusive of peer providers and their services.
- Promote recovery services through a change in attitude and opportunities to work.
- Eliminate stigma and discrimination through new hire orientation and on-going staff
- sensitivity training.
- Provide individual, flexible and accessible support during the peer's transition into the
- workforce.
- Provide training and educational opportunities for peer providers to grow and be
- promoted along a career path of their choice.
- Role clarity promotes job satisfaction and retention.

# EXHIBIT 11







**Suet**

Hey what happened with Brandon's case

2 Replies

Who is that

U know honestly, I know management says there's no money to pay you and etc and that since mot is shutting down and you won't have a position and that one would think u should be lucky they found you a position elsewhere, I really think u should continue to ask for more money. I mean I would even consider in a month or so to say that you have begun to look elsewhere (as a threat). Because Val started very positively that you are the best peer in the state and Gupta likes you a lot. Therefore if money is an issue, I'm sure they will
Make it work

They have more to lose in terms of hiring another peer and finding someone like you. 10-15k to save them that headache is nothing

Plus they freaking are paying me less than Hillary, so they saved some money from my salary lol

Hey what happened with Brandon's case

2 Replies

Your friend that was fired and wanted my attorney's info, maybe that is not his name

Oh him, they let that go. They didn't wanna pursue it

 Message